IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ZACHERIE DEAN BAINTER,

      **Plaintiff,**

   v.

      Civil Action 2:20-cv-5856
      Judge James L. Graham
      Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Zacherie Dean Bainter, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF No. 11). Plaintiff did not file a reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision

**I.   BACKGROUND**

Plaintiff protectively filed his applications for benefits on June 9, 2017, alleging that he has been disabled since October 23, 2016, due to depression, bipolar II disorder, ADHD, anxiety

and high blood pressure. (R. at 257-66, 287.) Plaintiff's applications were denied initially in October 2017 and upon reconsideration in January 2018. (R. at 72-131.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 146-47.) Administrative Law Judge Karen Sayon ("ALJ") held a video hearing on December 2, 2019,[1] at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 34-64.) A Vocational Expert ("VE") also appeared and testified. (*Id.*) On December 23, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-33.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff timely commenced this action. (ECF No. 1.)

## II. RELEVANT RECORD EVIDENCE

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's statements to the agency and his relevant, unscripted[2] hearing testimony as follows:

> [Plaintiff] alleges that bipolar II disorder, depression, and anxiety limit his ability to work (Exhibit 1E/2). He reported that he tends to forget things he is told (Exhibit 7E/6). He reported that he cannot focus when anxious. He reported that he lashes out at others if frustrated or anxious/stressed. At the hearing, he testified to constant fear, anxiety, and depression. He reported being manic and feeling violent. He testified that he can have uncontrollable rage and anger.

(R. at 21.)

> He testified he stopped working because he had a complete mental breakdown and that he had to wait to get an appointment at New Horizons. However, when he started

---

[1] An initial hearing was scheduled for August 6, 2019 but was continued due to additional exibits being added to the record. (*See* R. at 65-71.)

[2] Plaintiff began his testimony regarding the symptoms relating to his mental health conditions by reading from paperwork that someone else had prepared for him. (R. at 44-45.) The ALJ asked him to put away or cover up this paperwork. (R. at 45.)

> treatment at New Horizons, he reported that he worked as a night janitor until October 2016, when he was fired because he did not get along with the owner (Exhibit 14F/7), not because of a mental breakdown. He told the Disability Determination Services (DDS) he stopped working in October 2016 because he was unjustly accused of doing things in the kitchen and then quit (Exhibit 7A/6).

(R. at 23.)

> [Plaintiff] testified at the hearing that he was quite limited. He purported that since the alleged onset date, he only socialized with his roommate, Darcy. He reported that he cannot do any chores without her assistance and direction, and he even needs help with showering because he is anxious about water. He testified that he does not play video games and has not hunted or fished since he was about 10 years of age. He reported that he can only walk about 10-15 minutes because of his back—but he can pace for hours at a time. He testified that he goes days without sleeping and has frequent manic and low spells.

(R. at 24.)

### B. Relevant Medical Records

The ALJ summarized the relevant medical records concerning Plaintiff's mental health symptoms as follows:

> Pertaining to his mental impairments, [Plaintiff] has been diagnosed with depression, bipolar II disorder, and post-traumatic stress disorder (PTSD), and prescribed psychiatric medications including Wellbutrin, Lithium, Latuda, Quetiapine, and Clonazepam (Exhibits 4F/9, 6F/2 and 7, and 17F/25). On June 2, 2017, he presented to Amber Mallory, licensed social worker (LSW), and reported anxiety, depression, thoughts of death, worthlessness, and guilt (Exhibit 2F/2). He was diagnosed with anxiety, depression, dysthymic disorder, other specified anxiety disorder, and anxiety disorders, and referred to counseling/psychotherapy (Exhibit 2F/9-10).
>
> [Plaintiff], on October 31, 2017, presented to Kurt Heintzelman, M.D. (Exhibit 6F/6). It was noted that during mental status examination, he tended to only speak when spoken to and appeared worried. He reported a "pretty anxious" mood. He exhibited blunted, rather sullen, and humorless affect, normal memory, and fair judgment/insight (Exhibit 6F/6-7). Paranoid thought content was noted. Dr. Heintzelman diagnosed him with bipolar II disorder and prescribed him Lamictal, Abilify, and Ativan (Exhibit 6F/8-9).

3

> Subsequently, [Plaintiff] underwent psychotherapy through 2019 (Exhibits 14F and 15F). He reported being anxious, and having racing thoughts, social avoidance, and anger (Exhibits 14F/26, 33, 103, 110, and 131 and 15F/24). He was prescribed Geodon and Lamictal in February 2019 (Exhibit 14F/82 and 96). Seroquel was increased to 500 mg in July 2019 and to 800 mg in September 2019 (Exhibit 15F/24). After complaints of constant suicidal thoughts and fear, Geodon was increased to 60 mg in August 2019 (Exhibit 15F/15). In June 2019, he reported anxiety, childhood molestation, and witnessing deaths and that he was having nightmares and flashbacks (Exhibit 14F/16). He was prescribed increased Seroquel (to 400 mg) and increased Lamictal (to 200 mg) (Exhibit 14F/21). In October 2019, he reported continued suicidal thoughts (Exhibit 15F/41). He was advised to wean off Seroquel, and Abilify was increased to 5 mg.
>
> [Plaintiff] reported medication side effects (Exhibits 14F/33, 54, and 61). However, I note that there was a good effect of medication and considerable improvement noted. For example, he reported feeling better (Exhibit 14F/40 and 75). He reported sleeping better and less paranoia (Exhibit 14F/47). He reported that Klonopin was often helpful (Exhibit 14F/54). He reported marked improvement in mood (Exhibit 14F/75). He reported medications were working well without side effects in June 2018 and November 2018 (Exhibit 14F/82 and 96). He reported feeling better, no nightmares, improved mood, more energy, motivation, productivity, an exercising (Exhibit 14F/117). In April 2019, he was feeling well with no mental health complaints (Exhibit 14F/138).
>
> []. During therapy, he reported being anxious, racing thoughts, social avoidance, and anger (Exhibits 14F/26, 33, 103, 110, and 131 and 15F/24). He also complained of suicidal thoughts and flashbacks (Exhibits 14F/16 and 15F/15).

(R. at 22-23.)

> Also, the medical evidence shows that [Plaintiff] saw his primary care physician in May 2017, who gave him a referral for mental health treatment (Exhibit 4F/8), and he then had an intake at New Horizons in June 2017 (Exhibit 2F), with treatment starting in October 2017, and thus he did not wait long to start mental health treatment, once he requested a referral from his primary care physician.

4

> Regarding his mental impairments, again, [Plaintiff] had an intake evaluation at New Horizons in June 2017, and then he started medication management with Dr. Heintzelman and then with certified nurse practitioner (CNP) Callaway (Exhibits 2F, 6F, 14F, and 15F). He has maintained regular attendance there. He responds to medications when they are changed. The medical records mainly document his complaints. Abnormal mental status examination findings are mainly isolated to his mood, and the notes document regular adjustments to medications. When he complains of side effects from medications, he contacts his provider and they were changed. There are periods when he was doing well and only needed to return every eleven weeks. He testified that he regularly attends counseling, but none of these counseling records are in the file.

(R. at 24.)

## IV. ADMINISTRATIVE DECISION

On December 23, 2019, the ALJ issued her decision. (R. at 12-33.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. (R. at 18.) At Step One of the sequential evaluation process,[3] the ALJ found that Plaintiff did not engage in substantially gainful activity since October 23, 2016, the alleged onset date.

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(*Id.*) At Step Two, the ALJ found that Plaintiff had the severe impairments of obesity, lumbar herniated disc and foraminal stenosis, bipolar disorder, depression, anxiety, and post traumatic disorder. (*Id.*) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC"),[4] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) involving: no climbing ladders, ropes, or scaffolding; and occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs. He is limited to work involving simple instructions, routine tasks, simple decision-making, no public interaction, and settings with routine and predictable duties. He is limited to occasional interaction with supervisors and coworkers and no fast-paced production requirements.

(R. at 20.)

At step four, the ALJ determined that Plaintiff is unable to perform any of his past relevant work. (R. at 26.) The ALJ relied on testimony from the VE at step five to determine that in light of Plaintiff's age, education, work experience, and RFC, he was able to perform jobs that existed in significant numbers in the national economy, including inspector, laundry sorter, and small products assembler. (R. at 27.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act since October 23, 2016. (*Id.*)

---

[4] Because Plaintiff's challenge only involves his mental impairments, the Undersigned's discussion and analysis are limited to the same.

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"

*Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff sets forth two assignments of error: (1) the ALJ failed to properly evaluate his impairments under Medical Listing 12.04 and, as a result, the decision is not supported by the facts, the law, or substantial evidence; and (2) the ALJ's residual functional capacity determination is not supported by substantial evidence. The Undersigned disagrees and finds that the ALJ's decision is supported by substantial evidence.

### A. Listing 12.04

Plaintiff asserts that he has put forth sufficient evidence to demonstrate that his impairments meet or equal Listing 12.04. Further, Plaintiff contends that the ALJ failed to satisfy the *Reynolds* criteria by either inadequately or completely failing to evaluate the medical evidence, compare that evidence to the Listings, and provide a detailed explanation of his conclusion that the Listings were not met or equaled. Plaintiff's arguments are not well-taken.

The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). A claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). That said, "[a] claimant must satisfy all of the criteria to meet the listing." *Rabbers*, 582 F.3d at 653; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a

claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing."). All criteria must also be met concurrently for a period of twelve continuous months. *See* 20 C.F.R. § 416.925(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(D) ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."). A claimant bears the burden of proving that she meets or equals all of the criteria of a listed impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (clarifying that the burden of proving disability remains with the Social Security claimant at Steps 1 through 4 and does not shift to the ALJ until Step 5).

The ALJ found that Plaintiff's mental health impairments failed to meet Listing 12.04, and provided, in part, this rationale:

> The Regulations provide that to meet the listing 12.04, 12.06, and 12.15 "C" criteria, the mental disorder must be "serious and persistent;" that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder; and
>
> 2. Marginal adjustment, that is, a minimal capacity to adapt to changes in the environment or to demands that are not already part of an individual's daily life.

9

> The claimant has been prescribed psychotropic medications, and underwent mental therapy during the period in consideration. However, there is no evidence of a marginal adjustment or a minimal capacity to adapt to changes in the environment or to demands that are not already part of his daily life. Thus, the undersigned finds that the claimant's impairments do not meet listing 12.04(C), 12.06(C), or 12.15(C).

(R. at 20.)

The crux of Plaintiff's argument appears to hinge on the ALJ's conclusion that there is no evidence of marginal adjustment or minimal capacity to adapt to changes in the environment. The explanatory notes preceding Listing 12.04, state the following:

> The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(G)(2)(c). As relevant here, examples of psychosocial supports include help from family members or other people who monitor an individual's daily activities and help them to function. *Id*. at § 12.00(D)(1)(a). This help could include administering medications, reminding an individual to eat, shopping, paying bills, or changing work hours so an individual is never left alone. *Id*.

Plaintiff relies solely on his self-reports to support his claim of marginal adjustment. For example, Plaintiff cites his roommate's assistance with his activities of daily living; his going without sleep for multiple days; and his breakdowns that lead to uncontrollable rage, crying, screaming, and violent behavior as proof of both an exacerbation of symptoms and a deterioration in functioning. (ECF No. 11 at 9.) The ALJ, however, relied on other record evidence in reaching a different conclusion. Specifically, the ALJ cited Plaintiff's medical records, which she characterized as contradicting many of his allegations. For example, the ALJ noted Plaintiff's reports that he has outdoor hobbies including hunting and fishing and is frequently outside (R. at 341, 564, 708, 779), that he has friends (R. at 452), and that he is close to his mother and her boyfriend (*Id*.). The ALJ also relied on reports that he went swimming and to a concert. (R. at 461.) This constitutes substantial evidence to support the ALJ's conclusion that Plaintiff does not satisfy the paragraph "C" criteria for Listing 12.04.

Further, Plaintiff's *Reynolds* argument mischaracterizes the ALJ's discussion. In *Reynolds*, the ALJ found that the claimant had severe mental and physical impairments at Step Two, but at Step Three, the ALJ analyzed only whether the claimant's mental impairments met or equaled a Listing, and completely failed to assess whether the claimant's physical impairments met or equaled any Listings. *Id.* at 415–16. The Sixth Circuit Court of Appeals found that remand was appropriate because the ALJ "completely skipped an entire step of the necessary analysis." *Id.*

In this case, ALJ Sayon did not completely fail to consider whether Plaintiff's mental impairments met any listed impairments. She specifically addressed whether Plaintiff met Listing

12.04. (R. at 18-20.) In doing so, she noted the relevant criteria and concluded that, although there was some evidence of both medical treatment and mental therapy, there was no evidence of a marginal adjustment or a minimal capacity to adapt to changes in the environment. (R. at 20.) The lack of objective evidence as to these latter issues led the ALJ ultimately to conclude that, overall, the record did not support a finding that the criteria of Listing 12.04C had been met. As discussed above, the ALJ's characterization of the evidence is supported by substantial evidence.

Further, although the ALJ's Step Three analysis may have been brief, when combined with her detailed discussion of the record evidence related to Plaintiff's mental impairments, it provided sufficient articulation for adequate judicial review. Moreover, on several occasions, the Sixth Circuit has upheld an ALJ's sparse step three determination when an ALJ made "sufficient factual findings elsewhere in his decision to support his conclusion at Step Three." *Forrest v. Comm'r of Soc. Sec.*, 591 F, App'x 359, 366 (6th Cir. 2014) (*citing See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a Step Three medical equivalency determination, and finding no need to require the ALJ to "spell out every fact a second time")). Such is the case here. Accordingly, the Undersigned finds that the ALJ did not err when analyzing if Plaintiff met the criteria for Listing 12.04C.

Additionally, as noted, Plaintiff bears the burden of proof to demonstrate that he meets every component of a Listing. To the extent that Plaintiff attempts to demonstrate he meets the remaining criteria of Listing 12.04C by highlighting evidence relating to the criteria, such an effort simply is insufficient. *Kinney v. Saul*, No. 5:20-CV-01155, 2021 WL 4342020, at *16 (N.D. Ohio July 12, 2021). It is well settled that a decision supported by substantial evidence will

not be overturned even when substantial evidence may support the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. RFC

Plaintiff also argues that the ALJ's RFC fails to convey his limitations as to concentration, persistence and pace.  Specifically, Plaintiff asserts that the RFC fails to acknowledge that he "may require flexible breaks, redirection, and may be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job…." (ECF No. 11 at 14-15.)  By extension, Plaintiff argues that the hypothetical question to the vocational expert was not adequate.  Plaintiff also contends that, because the ALJ found the opinions of the State agency psychologists to be unpersuasive and these were the only opinions of record relating to his mental limitations, the ALJ impermissibly relied on her own lay opinion in making her RFC determination.

The determination of a plaintiff's RFC is entirely within the purview of the ALJ, and "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Here, the ALJ found that Plaintiff had a moderate limitation with respect to concentration, persistence, or pace.  (R. at 19.)  In her RFC determination, the ALJ specifically noted that Plaintiff was limited to "work involving simple instructions, routine tasks, simple decision-making, no public interaction, and settings with routine and predictable duties... occasional interaction with supervisors and coworkers and no fast-paced production requirements." (R. at 20.)  Indeed, the ALJ carefully considered the evidence in the record

regarding Plaintiff's limitations in concentration, persistence, and pace. To this end, the ALJ set forth the following:

> The State agency psychological consultant opined initially that the claimant should be limited to simple (1-2 step) tasks and occasional complex (3-5 step) instructions, simple decisions, no strict time limits or production standards, relatively isolated work station and supervisory support when first learning job tasks, infrequent public contact, minimal interaction with coworkers, no over-the-shoulder supervisory scrutiny, routine and predictable duties, well-explained and slowly introduced changes, and possible supervisory support with goal-setting and planning (Exhibits 3A and 4A). The State agency psychological consultant opined on reconsideration that the claimant is limited to simple (1-2 step) tasks, occasional complex (3-5 step) instructions, simple decisions, no strict time limits or production standards, possible relatively distraction-free setting work and supervisory support when first learning job tasks, infrequent public contact, minimal interaction with coworkers, no over-the-shoulder supervisory scrutiny, routine and predictable duties, well-explained and slowly introduced changes, and possible supervisory support with goal-setting and planning (Exhibits 7A and 8A). I find that these opinions are unpersuasive. The State agency rendered their opinions in October 2017 and January 2018, respectively, and thus only considered a few months of treatment. Additionally, their opinions are not supported by the claimant's treatment history and the good response to medications. For example, he reported feeling better (Exhibit 14F/40 and 75). He reported sleeping better and less paranoia (Exhibit 14F/47). He reported that Klonopin was often helpful (Exhibit 14F/54). He reported marked improvement in mood (Exhibit 14F/75). He reported medications were working well without side effects in June 2018 and November 2018 (Exhibit 14F/82 and 96). He reported feeling better, no nightmares, improved mood, more energy, motivation, productivity, and exercising (Exhibit 14F/117). In April 2019, he was feeling well with no mental health complaints (Exhibit 14F/138). There are periods documented in his medical records where he was doing well and only needed to return every 11 weeks (14F, 15F, 6F, 2F). And, when he complains of worsening symptoms or side-effects, his medications are changed or adjusted, and he has generally responded to adjustments.

(R. at 25.)

This Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC. *Schalk v. Comm'r of Soc. Sec.*, No. 10-13894, 2011 WL 4406824, at *11 (E.D. Mich. August 30, 2011), *report and recommendation adopted*, No. 10-13894, 2011 WL

4406332 (E.D. Mich. Sept. 22, 2011).   In the instant case, the ALJ's RFC determination included limitations addressed to concentration, persistence and pace.   Plaintiff fails to explain why the facts here require a more detailed hypothetical question. *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) (While "[t]here may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks [, plaintiff does not] explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.")  Instead, Plaintiff simply points to evidence in the record that he believes demonstrates his limitations in concentration, persistence, and pace. (ECF No. 11, at 14, citing symptoms.)  Beyond this, Plaintiff cites speculative limitations that he believes should have been included in the RFC. *See* ECF No. 11 at 7 ("the ALJ failed to acknowledge that [he] *may* require flexible breaks, redirection and *may* be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job") (emphasis added). He further speculates that identified jobs could have been excluded "if [he] required repetition of directions" or "only visual demonstrations." (*Id.*)

      Here, viewing the decision as a whole, the ALJ properly evaluated the record and provided sufficient explanation based on substantial evidence.  Plaintiff has offered nothing beyond citations to particular symptoms.  Moreover, even if Plaintiff's listing of symptoms was sufficient evidence to support a conclusion opposite that reached by the ALJ, it would not be enough here. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial

evidence supports the commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

Finally, Plaintiff, in conclusory fashion,[5] contends that because the ALJ found the State agency psychological consultants' findings unpersuasive, the ALJ relied solely on her lay opinion of the medical evidence in formulating the mental RFC. The Sixth Circuit, however, has confirmed that "[n]o bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the [RFC] finding"; the ALJ need only "make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). That is, "the administrative law judge's residual functional capacity finding does not need to correspond to a particular physician's opinion." *Id.* (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the argument that the administrative law judge is required to base her determination on a physician's opinion)); *see also Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017) (citing *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015)), *report and recommendation adopted,* 2017 WL 3172717 (S.D. Ohio July 25, 2017) ("[a]lthough the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion"). As discussed above, the ALJ made the required connection between the evidence she relied on and the conclusion she reached. Plaintiff, in offering nothing beyond

---

[5] The conclusory nature of Plaintiff's argument on this issue is also a sufficient basis for rejecting it. *Kuhn v. Washtenaw Cnty.,* 709 F.3d 612, 624 (6th Cir.2013) ("arguments adverted to in only a perfunctory manner, are waived.")

an undeveloped argument, fails to demonstrate anything to the contrary. Accordingly, the Undersigned finds no merit to Plaintiff's second statement of error.

## VII. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994

(6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:    November 5, 2021                                    /s/ *Elizabeth A. Preston Deavers*
                                                                                   Elizabeth A. Preston Deavers
                                                                                   United States Magistrate Judge